THOMAS F. McDONALD, ET AL. *v.* E. J. GREEN.

[Abstract Kentucky Law Reporter, Vol. 4—890.]

**Legal Rate of Interest on Note.**

Where a promise in a note is to pay ten per cent. interest from date, the note after its maturity will draw only the legal rate of interest.

**Payment of Debt by Receiving an Assignment of a Note.**

A creditor who receives a promissory note of a third person by assignment of his debtor, in the absence of an agreement that the assignment is received as payment, has the right only to collect the note and credit the amount on his debt; but the assignment is not payment and he is not required to credit his debt with the amount due on the note, when it is not collected.

**Rights of Pledgee of Collateral Security.**

While the pledgee of a note assigned to him as collateral security may not have the right to compromise a case for its collection and accept a new secured note for a lesser sum, he will be protected in doing so if the pledgor and all others interested agree to the terms of such a compromise.

APPEAL FROM KENTON CHANCERY COURT.

April 21, 1883.

OPINION BY JUDGE PRYOR:

This action was instituted by the appellee, E. J. Green, against McDonald and wife for the purpose of enforcing a lien on certain land sold by Green to McDonald for the benefit of the latter's wife. A deed was made by Green retaining a lien for the purchase-money, which deed the appellants, McDonald and wife, say was never accepted by them, and the case was treated by the chancellor below as if the bond for title had never been surrendered, and the contract enforced. The note was for $4,600 payable on the 1st of January, 1874, with interest at the rate of ten per cent. per annum from the date. The note is dated the 1st of January, 1873.

Various defenses were interposed by McDonald and wife to the collection of the note, the substance of each and all being that the note had been paid off by the delivery of a considerable quantity of whiskey and by the assignment of certain claims to Green which

the latter agreed to accept as payment. Much testimony has been taken in the case on the questions at issue and many exceptions made to depositions on the ground of irrelevancy for want of notice, etc. These exceptions it is not necessary to dispose of, as the court has considered only the depositions where the witnesses were examined and cross-examined with reference to the material questions involved.

The errors assigned are, first, that ten per cent. was improperly allowed on the note until paid; that the conventional rate of interest ceased when the note became due. The note in this case was signed by the obligor, McDonald, and the bond executed or signed by the vendor, Green. The one held the note and the other the bond. The note reads for interest at ten per cent. from date, and therefore after its maturity the legal rate of interest should have been charged against the appellant. The statute in regard to conventional interest requires that the agreement shall be signed by the obligors, and its legal effect in such a case must be determined by the writing itself, in the absence of fraud or mistake or in the absence of an allegation that the extra interest was a part consideration for the land; and the action being on the note, and that instrument the basis of the action, the court below erred in allowing ten per cent. on the paper after its maturity.

Second, the appellants also assign for error the failure on the part of the court below to allow the full value of a lot of whiskey taken by the appellee under an agreement to apply the proceeds to the payment of this note. The chancellor allowed appellant a credit for $2,748 when he should have been credited by $2,820. We do not understand why Green, the appellee, should be allowed interest on the value of the whiskey, for if he took the whiskey to sell on commission, he is entitled to his commission and the necessary expenses incurred in selling it, and must credit this note for the amount or value of the whiskey when sold. If he made the purchase absolutely the charge of commission of the appellee was improper; but the proof conduces to show that he was to sell it and account for it at $1.50 per gallon. Nor do we perceive any reason for crediting the appellee with the uncollected notes for which he sold the whiskey. He must account for the solvency of the parties to whom he sold or show some reason why he should not be so held. The appellants claim a credit below and are insisting on a credit here for $2,820, and this they are entitled to as of the date for which the credit entered by the chancel-

lor was given. ·The assignment of the Walden & Flanery note was in satisfaction of a claim Green held on McDonald for corn, and has not yet been collected; nor is there any certainty that it will be collected, and therefore there was no error in refusing the credit. The transfer of the claim is conceded, and there is no evidence showing that the transfer contained any other agreement than what was necessary to enable the appellee to collect it.

The third and last assignment of error is in regard to the Percival note. The assignment of this note is also conceded; and in determining the questions made with reference to this note we will necessarily consider the appeal based on this record of *McDonald* and *Wife v. Green, et al.* It is alleged and not denied that this note was assigned, the proceeds to be applied to the payment of the land note, that is, the appellee admits that he held the note under the agreement as collateral security, that what could be collected of it should be applied to the payment of the note for the land and that he held it in no other way. Suit was instituted on the note by *Green v. Percival* and a judgment obtained for $2,459. There was a motion for a new trial made and finally the suit compromised by Percival giving his note with Roberts as surety for $2,000. The appellants insist that appellee had no right to make the compromise and that a credit should have been given for $2,459, the amount of the judgment. It is plain from the proof that McDonald consented to the compromise, for the reason that the execution of the $2,000 note with Roberts as surety saved a judgment for $2,459 that was rendered against an insolvent party. It is said, however, that the land purchased belonged to the wife and that her husband had no right to make a compromise that would affect her. The wife refused to accept the deed which is the only evidence of her right, and the bond for the conveyance was made directly to the husband; and·besides the claim of the wife arises from the voluntary act of the husband based on no other consideration than that of love and affection. ·He was evidently controlling and had the right to control the action of Green in so far as his wife was concerned in the effort to collect this note, and the compromise being properly made and no loss sustained by it there is no error to appellants' prejudice. The chancellor, however, refused to allow any credit on the land note for the compromise note of Percival and of this the appellants complain.

McDonald, the husband, was a joint contractor with one Squires in the construction of certain sections of the Cincinnati Southern road. McDonald sold to the appellee, Marshall, his interest in the contract and Marshall assigned to him the note on Percival for $3,800, and agreed to make the note good for at least $3,000, this being the same note compromised for $2,000. At the time McDonald sold to Marshall his interest in the railroad contract, one Ford had an interest of one-fifth of the net profits, and McDonald agreed that he would protect Marshall as against Ford's claim, that is, Marshall was to have half the net profits as if Ford had no interest in the contract. This contract is admitted, but it is denied that any profits were made. Green, who held the Percival note as a collateral only, undertook by an action against Marshall to make him liable for the $3,000, alleging that Percival was insolvent and also seeking to attach in the hands of the Cincinnati Southern any moneys that it might be owing Marshall. Marshall defended upon the ground that McDonald had failed to comply with his contract; that Ford had obtained his share of the profits amounting to near $7,000 and that his half of that sum would amount to more than the Percival note. He also enjoined Green and McDonald from collecting the Percival note, insisting that Green had his lien on the land and only held the note as collateral security, and that McDonald was insolvent. The testimony of Squires, the bookkeeper of the firm of Marshall & Squires, was taken and it appears that large profits were made on the contract in which McDonald sold his interest to Marshall. Marshall's deposition and others were taken, all conducing to show the same state of fact. It is insisted by the appellants that the profits were realized on other parts of the work and outside of the contract transferred to Marshall. The weight of the testimony is against the appellants; and although the latter attempt to show that nothing was realized in the way of profit we are satisfied as the record stands the judgment was proper on this branch of the case.

It is argued, however, that McDonald was not present when the settlement was made between Squires, Marshall and Ford and that it was only a partial settlement at best. It clearly appears that Ford was paid $6,000 or $7,000 by Marshall and Squires, and it is hardly reasonable that such a payment would have been made for the purpose only of avoiding the payment of the Percival debt. If McDonald was not satisfied with the settlement as made and proved,

he could by motion based on sufficient grounds have had the partnership of Squires and Marshall settled by a commissioner and the exact amount of profits ascertained. It was incumbent on Marshall to establish his set-off as against the claim Green and McDonald were asserting against him, and to prevent the payment of the Percival note to Green. It is plain that all the parties, Green, McDonald and Marshall, consented to the compromise by which Percival secured $2,000 in full of his debt, and the note was placed in the hands of White until the litigation between Green and Marshall terminated.

If anything was wrong in the settlements between Marshall and Squires it should have been suggested by the appellants, or at least the opportunity sought for an investigation of the accounts. They were content, however, with abiding by the proof, and for the reason doubtless that they could not benefit their case by delay, and we see no reason for disturbing the judgment on this branch of the case. There was no error in allowing Green and Marshall their costs, although there was no judgment in favor of Marshall other than that neither Green nor his assignor could recover the Percival note, and this being really the vital question in the case the judgment for costs was proper. The Cincinnati Southern is not before the court nor is the commissioner to whom the allowance was made. The judgment, therefore, on the appeal of McDonald v. Green, Marshall, et al. is *affirmed,* and reversed on the appeal of McDonald and Wife v. Green, with directions to so modify the judgment as to allow only six per cent. interest on the purchase-money after maturity and to credit it by $2,820 for the whiskey instead of the credit fixed by the judgment. The judgment in other respects is *affirmed.* This disposes of the entire case.

*Collins & Finley, for appellants.*

*O'Hara & Bryan, for appellee.*